IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
GALVESTON DIVISION

| | | |
|---|---|---|
| CHANDRA JACKSON ON BEHALF OF | § | |
| MINOR CHILD JANE DOE, | § | |
| TATIAWNA JORDAN ON BEHALF OF | § | |
| MINOR CHILD JOHN DOE, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | C.A. No. 3:22-cv-00271 |
| | § | |
| CLEAR CREEK INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |
| *Defendant*. | § | |

## DEFENDANT CLEAR CREEK INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS

TO THE JUDGE OF THE HONORABLE COURT:

Defendant Clear Creek Independent School District moves to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[1] and would respectfully show the Court as follows:

## I.   OVERVIEW OF MOTION

Plaintiffs John Doe and Jane Doe were students at North Point Elementary, a Clear Creek Independent School District ("Clear Creek ISD" or "the District") school, during the 2019-2020 school year.   Plaintiffs allege that a number of incidents occurred throughout the 2019-2020 school that Plaintiffs claim were race-based harassment. The incidents described by Plaintiffs include alleged incidents of bullying by other students and

---

[1] Counsel for the Defendant certifies here, and below, that pursuant to Judge Brown's procedures and Rule 6, Defendant served Plaintiffs with a letter on September 21, 2022, informing them of their right to amend their pleadings under the Judge's procedures. The letter specified that the amended pleading must be filed within 14 days of the date of the letter, which would have been October 5, 2022. Plaintiffs did not timely amend their pleading.

mistreatment by school employees. Plaintiffs claim that the actions of the District in handling these incidents constituted racial discrimination, violated Title VI, 42 U.S.C. § 2000d, et seq., and violated John and Jane Doe's rights to due process and equal protection of the laws under the Fourteenth Amendment to the United States Constitution. Plaintiffs assert all claims against Defendant Clear Creek ISD.

## II.    STANDARD OF REVIEW

Dismissal of a lawsuit on the pleadings is proper where there is either (1) lack of a cognizable theory of recovery or (2) the absence of sufficient facts alleged under a cognizable legal theory. *In re Baker Hughes Securities Litigation*, 136 F.Supp.2d 630, 636 (S.D. Tex. 2001) (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).  While the Court must accept the plaintiff's factual allegations as true, the factual allegations must exist: "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting 2A *Moore's Federal Practice* § 12.07 [2.-5] at 12-91).  In addition, what must be alleged are facts: "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metropolitan Life Ins., Co*., 566 F.3d 436, 439 (5th Cir. 2009) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).  A court considering a motion to dismiss may choose to begin by identifying pleadings that are not entitled to the assumption of truth because they are no more than conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1940 (2009).

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A court may dismiss a complaint for failure to state a claim if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (quoting *Twombly,* 550 U.S. at 570).   "[A] plaintiff is obligated to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bradley v. Phillips Petroleum Co.*, 527 F.Supp.2d 625, 636 (S.D. Tex. 2007) (quoting *Twombly,* 550 U.S. at 555). "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Id.* (quoting *Twombly,* 550 U.S. at 555, n. 3).  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must provide the plaintiff's grounds for entitlement to relief - including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." *Cuvillier* v. *Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (internal quotation omitted). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Id*. (internal quotation omitted).

In *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court elaborated on the plausibility standard introduced in *Twombly*, holding that Rule 8(a)(2) requires that "the well pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. at 679.  A complaint states a plausible claim for relief only if it is supported by specific factual allegations, independent of conclusory allegations, that: 1) set forth a claim upon which relief could be granted, and 2) give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Id.* at 679, *Twombly*, 550 U.S. at 555.  In other words, the complaint must demonstrate a "reasonably founded hope that the [discovery] process will reveal relevant evidence" sufficient to establish the plaintiff's claim.  *Dura Pharms.* v. *Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627 (2005) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917 (1975)).  Otherwise, a plaintiff with "a largely groundless claim" would be permitted to "simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *See Dura Pharms*., 544 U.S. at 347.

### III.   <u>STATEMENT OF ISSUES</u>

A.   Whether Plaintiffs have alleged facts sufficient to show a violation of Jane Doe's and John Doe's Fourteenth Amendment rights to equal protection.

B.   Whether Plaintiffs have alleged facts sufficient to show that the District violated Jane Doe's and John Doe's Fourteenth Amendment rights by disciplining them without due process of law.

C.   Whether Plaintiffs have alleged facts to show that the alleged constitutional violations were committed pursuant to official Clear Creek ISD policy or firmly entrenched custom tolerating misconduct, as required for municipal liability under *Monell*.

D.   Whether Plaintiffs have alleged facts sufficient to show a violation of Title VI of the Civil Rights Act of 1964.

## IV.   <u>ARGUMENTS AND AUTHORITIES</u>

As discussed below, Plaintiffs have failed to make out any viable legal claims against the District, and therefore dismissal of all claims is appropriate.

**A.     Plaintiffs have failed to plead facts sufficient to support their Fourteenth Amendment claims under Section 1983.**

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 132 S.Ct. 1657, 1661 (2012).  The statute is not itself a source of substantive rights; rather, it provides a vehicle for vindicating otherwise conferred federal rights. *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003).  Plaintiffs here seek to redress alleged violations of John and Jane Doe's rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution.  (Dkt. 3, ¶¶ 9-13).

To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *Moore v. Willis Independent School Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  A local government entity, such as Clear Creek Independent School District, may be held liable under § 1983 for constitutional violations committed pursuant to a governmental policy or custom.  *Id*. However, without an underlying constitutional violation, the District cannot be held liable under § 1983.  *Poloceno v. Dallas Independent School District*, 2019 WL 2568681, at * 2 (N.D. Tex. June 21, 2019).   A plaintiff must plead specific facts demonstrating a constitutional deprivation and may not rely only on legal conclusions to state a § 1983 cause of action.  *Bluitt v. Houston Independent School Dist.*, 236 F.Supp.2d 703, 719-20

(S.D. Tex. 2002) (citing *Fee v. Herndon*, 900 F. 2d 804, 807 (5th Cir. 1990)). Although Plaintiffs allege that Jane and John Doe were bullied by other students and mistreated by their teachers, they fail to plead any facts that would show that any of the individual employees or students were personally motivated to take the alleged acts because of Plaintiffs' race.  To state a claim for race discrimination under any of the theories advanced by Plaintiffs, they must establish *intentional* discrimination.

> **1. Plaintiffs have failed to plead facts to show that Clear Creek ISD violated John and Jane Doe's Fourteenth Amendment rights to equal protection of the law.**

Plaintiffs allege conclusorily that John and Jane Doe were "victims of racial discrimination through severe and pervasive harassment by both school staff, administrators, and fellow students that have denied them equal access to the same educational opportunities enjoyed by their white classmates," that they "were exposed to a racially hostile environment that violated the equal protection promised under the Fourteenth Amendment," and that Clear Creek ISD "treated John and Jane Doe different from the white students." (Dkt. 3, ¶ 11).  To state an equal protection claim, Plaintiffs must allege that (1) they "received different treatment from that received by similarly situated individuals and that (2) the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion ISD*, 804 F.3d 398, 412 (5th Cir. 2015) (internal quotations omitted). Disparate impact alone is not sufficient to state an Equal Protection claim.  *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).  A claimant must allege facts to show that the decision maker singled out a particular group for disparate treatment and that

purposeful discrimination motivated the state action that caused the plaintiff's injury. *Fennell,* 804 F.3d at 412; *Johnson*, 110 F.3d at 306.

Plaintiffs also allege that "the teacher prevented John Doe from going to the restroom. … Other white students could go to the restroom as needed, but John Doe was subjected to further humiliation and frankly torture because he was African American." (Dkt. 3, ¶ 7 at 11.12-15-2019 [sic]). Plaintiffs have not alleged any facts to show that, in these circumstances, the teacher's decision to prevent John Doe from going to the restroom was motivated by racial animus.  Nor is there any allegation that any individual school employee harbored racial animus toward African Americans.  Instead, Plaintiffs appear to rely on Plaintiff John Doe's race to impute discriminatory intent to Defendant's actions. These allegations, without more, are insufficient to establish that Defendants' acts stemmed from a discriminatory intent.

Plaintiffs also allege that an "older student punched John Doe" but that "the school inexplicably did not tell [his] parents," and therefore, "the school swept the attack under the rug." (Dkt. 3, ¶ 7 at 10.20.19). Plaintiffs go on to say that "John Doe, an African American student, did not receive these same protections as the children in the majority." (Dkt. 3, ¶ 7 at 10.20.19). However, Plaintiff does not provide any facts that would indicate the student who punched John Doe was motivated by racial animus. Plaintiff has not alleged facts regarding the identity or the race of the other student or the teacher who Plaintiffs claim did not inform the parents, whether the other student and/or John Doe were disciplined for the incident, whether any school employee was aware of the fight and what protections were provided to white students but withheld from John Doe. Plaintiffs do not

allege any facts to show that this was anything other than bullying (or mutually antagonistic behavior) between young students, and mistreatment by teachers.

Thus, Plaintiffs' equal protection claim must be dismissed, because Plaintiffs have failed to allege facts that would plausibly show that a white student would be treated differently than Jane and John Doe for a similar violation. In other words, there are no facts to support Plaintiffs' claim that the decision to not to report the punch to John Doe's parents or the decision to not allow John Doe to use the restroom were motived by his race. *See Ruvalcaba v. Angleton Independent School District*, 2019 WL 2996536, at * 3 (S.D. Tex. June 6, 2019) (dismissing § 1983 claim because plaintiff failed to plead facts to show that principal's conduct was motivated by her gender).

### 2. Plaintiffs have failed to allege facts to support a claim for deprivation of Due Process under the Fourteenth Amendment.

Plaintiffs reference "due process" several times, (Dkt. 3, ¶¶ 10-11), but the Amended Complaint fails to assert facts that would state a plausible due process claim. The basis for any due process claim is difficult to discern from the Amended Complaint. To the extent that Plaintiffs are arguing that either Plaintiff was disciplined for the incidents discussed in the Amended Complaint, any such discipline would not have required procedural due process, because the student would still have been educated at school, and as such would not have been deprived of a property interest in education. *See Nevares v. San Marcos Consol. Indep. Sch. Dist*., 111 F.3d 25 (5th Cir. 1997).

To the extent Plaintiffs are alleging that their due process rights were violated as a result of fellow students assaulting or physically mistreating them, "a State's failure to protect an individual against private violence simply does not constitute a violation of the

Due Process Clause." *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)); *see also Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1001 (5th Cir. 2014) ("[T]he Lances cannot make a constitutional claim based on student-to-student harassment or Montana's own suicide."); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 523 (5th Cir. 1994) (student accidentally shot and killed another student after a dance in the high school parking lot did not state a claim under Fourteenth Amendment). Any such substantive due process claim here fails as a matter of law.

> **3. Plaintiffs have failed to show that any alleged deprivation of John and Jane Doe's constitutional rights occurred pursuant to official Clear Creek ISD policy or firmly entrenched custom tolerating misconduct, as required for municipal liability under *Monell*.**

Even had Plaintiffs adequately plead an underlying constitutional violation, they have not alleged facts to establish that the District is liable for those violations. To succeed on a § 1983 claim, Plaintiffs must show that the District itself is liable for the violation. *See generally Collins v. City of Harker Heights, Texas,* 112 S.Ct. 1061, 1066 (1992). The Supreme Court set forth its standard on municipal liability in *Monell v. City of New York*:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38 (1978); *see also Owen v. City of Independence*, 445 U.S. 622, 633, 100 S.Ct. 1398, 1406 (1980).

To state a constitutional claim against a school district under § 1983, a plaintiff must show 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose 'moving force' is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). A school district may be held liable only if the constitutional injury was caused by an official policy or custom promulgated by government officials who have final policy-making authority. *Collins*, 503 U.S. at 120-21. Under Texas law, the final policy-making authority for an independent school district rests with the school district's board of trustees. *Rivera v. Houston Indep. School Dist.*, 349 F.3d 244, 247-48 (5th Cir. 2003); *Jett v. Dallas ISD,* 7 F.3d 1241, 1245 (5th Cir. 1993). "For a Texas school district to be liable for acts taken pursuant to an alleged custom, '[a]ctual or constructive knowledge of such custom' must be fairly attributable to the district's Board of Trustees." *Saldana v. Angleton Independent School District*, 2017 WL 749292, at *4 (S.D. Tex. Feb. 27, 2017) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)). The Fifth Circuit has repeatedly held that the plaintiff's description of the government's policy or custom and its relationship to the underlying constitutional violation cannot be conclusory and must contain specific facts. *Balle v. Nueces Cty. Tex.*, 952 F.3d 552, 559 (5th Cir. 2017) (citing *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997)).

> **a.    Plaintiffs have failed to allege facts sufficient to state a § 1983 claim based on a pattern or practice of race discrimination at Clear Creek ISD.**

Plaintiffs allege that Clear Creek "sanctioned the custom, practice and/or policy or procedure of allowing discrimination to be routinely exercised against John and Jane Doe

without reprimand." (Dkt. 3, ¶ 13).  However, Plaintiffs have not identified or alleged facts that would plausibly show that any administrators at North Point were aware of and "sanctioned" the specific incidents that were occurring in the classrooms. Plaintiffs do not allege that the Clear Creek ISD Board of Trustees was involved in John Doe's or Jane Doe's incidents or discipline.  They have not alleged that the Clear Creek Board of Trustees formally adopted any actual policies, regulations, bylaws, or ordinances that contributed to Plaintiffs' alleged injuries.  Plaintiffs do not allege that there were any discriminatory policies, or that that the Board itself adopted or otherwise authorized those policies.

Instead, Plaintiffs point to a school policy they admit was appropriate, and then argue that it was not followed. (Dkt. 3, ¶¶ 7 at 9.5.19). Plaintiffs state that the "teacher's decision to disregard the attack was inconsistent with school policy thereby created a disparate and separate impact upon John Doe" causing him injury. (Dkt. 3, ¶ 7 at 9.5.19). Plaintiffs also state that instead "of reprimanding the student who hit Jane Doe, which would have been consistent with school policy, the teacher blamed Jane Doe's (victim) behavior in progress reports." (Dkt. 3, ¶ 8 at Incident 5).  So in the end, Plaintiffs' "custom and practice" argument is literally the same thing as alleging that school employees failed to follow the law and the anti-harassment/bullying policies they admit were adopted by the Board.  In *Jett v. Dallas ISD*, 7 F.3d 1241 (5th Cir. 1993), the Fifth Circuit analyzed the same "failure to follow" argument, and determined that it did not create new "policies" for purposes of § 1983, nor did it delegate policymaking authority to the lower-level employee:

> *Praprotnik* similarly states that the authority to make municipal policy is necessarily the authority to make *final* policy.... When an official's discretionary decisions are constrained by policies not of that official's making, those policies, ***rather than the subordinate's departures from them***,

> are the act of the municipality, and that simply going along with discretionary
> decisions made by one's subordinates, however, is not a delegation to them
> of the authority to make policy.

*Id*. at 1247 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127, 130 (1988)) (internal

citations omitted; emphasis added.)   Likewise, in *Barrow v. Greenville ISD*, 480 F.3d 377

(5th Cir. 2007), the Fifth Circuit stressed that even where a lower-level employee's

decisions were final and unreviewable, that employee was still not the policymaker and

those decisions were not "policies" for purposes of § 1983 liability, if those decisions were

supposed to be following policies created by the school board:

> [A]n official whose discretionary decisions on a particular matter are final
> and unreviewable, meaning they can't be overturned, is constrained if
> another entity has ultimate power to guide that discretion, at least
> prescriptively, whether or not that power is exercised.

*Id*. at 382 (citing *Jett*, 7 F.3d at 1247).  Therefore, if as the Plaintiffs argue in their Amended

Complaint the District has proper policies and the problem was that employees simply

weren't following those policies, then that is fatal to the Plaintiffs' § 1983 claims.   That is

a *respondeat superior* argument improper under *Monell*.

Plaintiffs allege that Clear Creek ISD "sanctioned" the conduct, and that Clear

Creek ISD "allowed teachers to forgo their duties to John and Jane Doe," without asserting

any supporting facts. (Dkt. 3, ¶ 13). However, even if the administration was aware of any

of the alleged incidents, "tacit approval" of an isolated incident, which Plaintiffs appear to

believe is implied through a lack of response, is a far cry from a "policy statement . . .  or

decision officially adopted" by the Board of Trustees to apply that disciplinary method

across the District.  *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).  As the Supreme

Court stated in *Praprotnik*, "[s]imply going along with discretionary decisions made by

one's subordinates ... is not a delegation to them of the authority to make policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130, 108 S.Ct. 915 (1988).

In discussing ratification, the Court held that only if "the authorized policymakers approve a subordinate's decision *and the basis for it* " would their ratification be chargeable to the municipality. *Id*. at 127 (emphasis added).  In reviewing cases involving the alleged illegal subjective motivations of subordinate employees, the Fifth Circuit has held repeatedly that ratification does not occur for purposes of *Monell* if the governing board does not know about the illegal motivation (*i.e.* "*the basis for*" the challenged decision). *See*, *e.g*., *Okon v. Harris Cty. Hosp. Dist.*, 426 F. App'x 312, 317–18 (5th Cir. 2011); *Milam v. City of San Antonio*, 113 Fed.Appx. 622, 628 (5th Cir. 2004).  In *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992), the Ninth Circuit noted that any less stringent standard would essentially eviscerate *Monell*:

> The fact that the City Manager did not overrule the Fire Chief in this instance thus cannot form the basis of municipal liability under section 1983. To hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into section 1983 law under the guise of *Pembaur*'s "single decision" rule. We decline to endorse this end run around *Monell*.

*Id*. at 1348.  If the Plaintiffs failed to allege that the school officials were motivated by racial animus, then the school board certainly cannot be said to have ratified that non-existent illegal motivation.

Nor have Plaintiffs alleged that the Board permitted "persistent and widespread practices" or "practices that are permanent and well settled and deeply embedded traditional ways of carrying out policy." *Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir. 1984).  There are no factual allegations alleging similar problems at other schools in

the District, nor are there any allegations regarding similar problems involving other students at the Plaintiffs' school.  Absent such allegations, Plaintiffs may not recover under this theory.  Moreover, Plaintiffs have not made any effort to establish that the Board had actual or constructive knowledge of any improper custom, as required to recover on a § 1983 allegation of persistent practices or custom. *Id*. at 862.  The Amended Complaint does not contain any facts to show that the Board knew about or condoned the complained of behavior.  *Fennell*, 804 F.3d at 413 (quoting *Rivera*, 349 F.3d at 250).  The Amended Complaint is bereft of any allegations pertaining to the Board's conduct or knowledge, before or after the alleged incidents.  Plaintiffs have failed to allege the fundamental elements of a § 1983 claim, and therefore their lawsuit must be dismissed.

Even if Plaintiffs had set out "a formulaic recitation of the elements of a [§ 1983 claim]", they have not alleged any *factual* basis for their allegations as required under Rule 12(b)(6) and the *Twombly-Iqbal* standard.  *Iqbal*, 129 S.Ct. at 1951 (holding that plaintiff's allegation that defendants "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," were conclusory allegations that did not meet the pleadings standards of Rule 8).  Numerous courts since *Twombly* and *Iqbal* have held that a plaintiff must plead specific facts to demonstrate the existence of a custom, policy or practice sufficient to establish liability under *Monell*, or risk having their claims against the governmental entity dismissed under Rule 12(b)(6). *See B.A.B. v. Board of Educ. of the City of St. Louis*, 698 F.3d 1037 (8th Cir. 2012);  *Kean v. Henry*, 2013 WL 1802632 (3d Cir. 2013); *Gray v. City of Roswell*,

486 Fed.Appx. 798 (11th Cir. 2012); *Johnson v. City of Wakefield*, 483 Fed.Appx. 256 (6th Cir. 2012) (dismissing numerous constitutional retaliation claims under *Iqbal* because the plaintiff had not pled facts showing a City policy or custom to retaliate sufficient to establish liability under *Monell*); *Unger v. City of Mentor*, 387 Fed.Appx. 589, 592 (6th Cir. 2010) (dismissing First Amendment claim against City that plaintiff was terminated for requesting reclassification so she could join a union, "[b]ecause Unger does not allege misconduct by the City itself or that a city policy or custom authorized Cooperrider's alleged misconduct…").  As such, Plaintiffs' allegations are legally insufficient to avoid dismissal under Rule 12(b)(6).  *Poloceno*, 2019 WL 2568681, at *5 (dismissing § 1983 claim against school district because plaintiff did not plead facts to establish existence of custom or basis for imputing knowledge of alleged custom to Board); *Lyveria Hopson Lloyd and the Estate of Christian A. Hopson, Plaintiffs, v. Jimmy D. Jones, et. al., Defendants.*, 2019 WL 4786874, at *13 (E.D. Tex. Sept. 10, 2019) (dismissing § 1983 claims because "conclusory allegation and verbatim recitation of…applicable legal standards without…benefit of supporting facts are insufficient to state a policy or custom").

      **b.**    **Plaintiffs have failed to allege facts sufficient to support a § 1983 claim premised on a failure to train theory.**

Plaintiffs also assert a theory of liability predicated on Clear Creek ISD's alleged failure to train its employees.  (Dkt. 14, ¶ 62).  To state a claim for failure to train against the District, Plaintiffs must allege that 1) the District's training policy procedures were inadequate, 2) the District was deliberately indifferent in adopting its training policy, and 3) the inadequate training policy directly caused John Doe's and Jane Doe's alleged constitutional injuries.  *Sanders-Burns v. City of Plano*, 593 F.3d 366, 380 (5th Cir. 2010).

To establish deliberate indifference on such a claim, Plaintiffs must show that "in light of the duties assigned to specific . . . employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989)). While it is possible to establish deliberate indifference from a single incident, claims of inadequate training generally require that the plaintiff establish a pattern of similar violations. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 382-83 (5th Cir. 2005). The Fifth Circuit has characterized this "single incident exception" as inherently narrow and has been reluctant to expand the parameters of its application. *Escobar v. City of Houston*, 2007 WL 2900581, at *7 (S.D. Tex. Sept. 29, 2007). To recover under this exception, a plaintiff must show that the "highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id*. (internal quotations omitted).

Plaintiffs have not alleged any facts to support a § 1983 claim based on a failure to train any District employee. Specifically, Plaintiffs have not alleged facts to show the District was "deliberately indifferent" to the possibility of a constitutional violation. The Amended Complaint contains no allegations regarding the duties and tasks of the any specific District employees, the training policies and procedures required by Texas law, the District's compliance with those requirements, or the overall adequacy of the required training. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (liability inquiry for

failure to train claim focuses on adequacy of training program in relation to tasks particular employee must perform); *see also Sanders-Burns*, 594 F.3d at 382 (in failure to train cases, if employees received training required under Texas law, burden shifts to plaintiff to show that legal minimum training inadequate).  Plaintiffs' have failed to satisfy their burden to state facts to establish a "direct causal link between the [lack of training] and the violation." *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018).

Moreover, Plaintiffs have failed to identify a "pattern of violations" as traditionally required to satisfy the deliberate indifference requirement.  *Escobar*, 2007 WL 2900581, at *7 (listing cases).  Plaintiffs have not pointed to any other instance in which a student's constitutional rights were allegedly violated as a result of racially discriminatory treatment or any other improper conduct.  *Snyder*, 142 F.3d at 798 (plaintiff is required to demonstrate at least a pattern of similar incidents in which citizens are injured).  In fact, Plaintiffs have not identified any clear instances of student discipline and have not plead any facts to meet the high bar required for the application of that exception.  *See Doe v. Edgewood Independent School District*, 2011 WL 1118516, at * 11 (W.D. Tex. March 8, 2019) (noting that a showing that the defendant school district failed to implement any training pertaining to the complained of conduct may satisfy "high evidentiary bar" for application of single incident exception); *Brown v. Bryan County*, 219 F.3d 450, 463 (5th Cir. 2000) (single incident exception applied where county failed to provide any training or supervision to inexperienced officer with record of recklessness). Because Plaintiffs' failure to train claim lacks factual support and rests on conclusory allegations alone, it should be dismissed. *A.B. v. Board of Educ. of the City of St. Louis*, 698 F.3d 1037, 1040-

41 (8th Cir. 2012) (upholding district court's dismissal of failure-to-train claim because "allegations merely recited elements of their causes of action and asserted legal conclusions without sufficient factual support to make the claims plausible.").

**B.      Plaintiffs have failed to allege facts to support an inference of discriminatory intent as required to state a Title VI claim.**

Under Title VI of the Civil Rights Act of 1964, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  To state a claim under Title VI, a plaintiff must plead facts to establish intentional discrimination by a private or public entity.  *Alexander v. Sandoval*, 532 U.S. 275, 281, 121 S.Ct. 1511 (2001).  An entity may not be held vicariously liable for an employee's conduct under Title VI.  *Vouchides v. Houston Cmty. Coll. Sys.*, 2011 WL 4592057, at *6-7 (S.D. Tex. Sept. 30, 2011).   If Plaintiffs fail to provide specific allegations that Clear Creek ISD, as an entity, acted with discriminatory intent against John and Jane Doe, they have not stated a claim for discrimination under Title VI.  *Manley v. Texas Southern University*, 107 F.Supp.3d 712, 723 (S.D. Tex. 2015); *Kirk v. Monroe City School Board*, 2018 WL 4292355, at *5 (Aug. 24, 2018).

In their Amended Complaint, Plaintiffs allege that "Clear Creek treated John and Jane Doe different from white students," (Dkt. 3, ¶ 11) and that "John and Jane Doe were deprived of the same educational opportunity as their white classmates."  (Dkt. 3, ¶ 15). Aside from this allegation, there are no <u>facts</u> to suggest that Jane Doe's or John Doe's race was a motivating factor in the discipline or treatment they received.  Plaintiffs have not

pointed to any other incident of discipline as a point of comparison, much less disciplinary action imposed on (or not imposed on) similarly-situated white students for similar violations. Plaintiffs' Amended Complaint simply lacks the facts necessary to permit the inference that the District intentionally discriminated against Jane and John Doe due to their race. Absent such allegations, Plaintiffs have not stated a valid Title VI claim, and said claim should be dismissed. *Kirk*, 2018 WL 4292355, at *6 (recognizing that "singling out members of a protected class can support a claim of discrimination" yet dismissing Title VI claim because plaintiff failed to allege any facts warranting plausible inference of discriminatory intent).

**C.**      **Plaintiffs are not entitled to emotional distress damages or punitive damages.**

On April 28, 2022, the United States Supreme Court decided *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562, 1576 (2022), and held that emotional distress damages are not recoverable in a private action for discrimination under Spending Clause statutes. In *Cummings*, the Court ruled that emotional distress damages are not generally compensable in contract law:

> There is thus no basis in contract law to maintain that emotional distress damages are "traditionally available in suits for breach of contract," Barnes, 536 U.S. at 187, 122 S.Ct. 2097, and correspondingly no ground, under our cases, to conclude that federal funding recipients have "clear notice," Arlington, 548 U.S. at 296, 126 S.Ct. 2455, that they would face such a remedy in private actions brought to enforce the statutes at issue.
> ***
> For the foregoing reasons, we hold that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here.

*Id.* at 1576. Title VI of the Civil Rights Act of 1964 is a Spending Clause statute. *Id.* The Court in *Cummings* held that, as a general matter, certain principles of contract law will

guide whether remedies are available for a violation of a Spending Clause statute. *Id.* at 1570-72. When Congress disburses funds to schools and other entities, the spending is in the "nature of a contract": in exchange for the federal money, the recipient agrees not to engage in discrimination. When disbursing funds, Congress must clearly and unambiguously communicate the conditions attached to the money, including the penalties that will apply if the school violates those contractual conditions. *Id.* In *Cummings*, the Supreme Court found that Congress did not clearly and unambiguously give notice that emotional distress damages were available remedies. Although Plaintiffs' broad form request for damages may include some category of damages that are still viable under Title VI, the vast majority of damages that Plaintiffs seek are related to emotional distress (mental anguish, past and future emotional pain and suffering, loss of enjoyment of life), *see* Dkt. 3, ¶¶ 20-21, and are no longer available in this case.

In addition, Plaintiffs also seek punitive damages. *Id.* As a matter of law, punitive damages are not available against municipalities and other local governments under 42 U.S.C. § 1983. *See City of Newport v. Fact Concerts Inc.*, 453 U.S. 247 (1981); *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640,647 n. 1 (5th Cir. 2019); *Mosley v. Houston Comm. College Sys.*, 951 F.Supp. 1279, 1290 (S.D. Tex. 1996). Punitive damages are also not available under Title VI. *Barnes v. Gorman*, 536 U.S. 181, 188-189 (2002) ("punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civile Rights Act"). Accordingly, the District moves for summary judgment on Plaintiffs' emotional distress and punitive damage claims.

## CONCLUSION AND PRAYER

Defendant Clear Creek Independent School District requests that this Court immediately dismiss all of Plaintiffs' claims against it in their entirety. Defendant further requests that the Court grant it such remedies, both at law and in equity, to which it has shown itself entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:   /s/ Christopher B. Gilbert
      Christopher B. Gilbert
      State Bar No. 00787535
      Southern District No. 17283
      Attorney-in-Charge

Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
Telephone:   (713) 554-6744
Fax:         (713) 583-7698
cgilbert@thompsonhorton.com

ATTORNEY FOR DEFENDANT
CLEAR CREEK ISD

**OF COUNSEL:**

Ryan H. Newman
State Bar No. 24059944
Southern District No. 988075
**THOMPSON & HORTON LLP**
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
Telephone:   (713) 554-6767
rnewman@thompsonhorton.com

## CERTIFICATE OF CONFERENCE

I certify that, pursuant to Judge Brown's procedures and Rule 6, Defendant Clear Creek ISD served Plaintiffs with a letter on September 21, 2022, informing them of the right to amend the pleadings under the Judge's procedures. The letter specified that the amended pleading must be filed within 14 days of the date of the letter. Plaintiffs did not timely amend their pleading.

  /s/ Christopher B. Gilbert
Christopher B. Gilbert


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading has been served on all counsel of record through the Court's electronic filing system, on October 6, 2022:

> Mr. Todd E. Webb
> The Law Office of Todd E. Webb
> 4101 Greenbriar Suite 122E
> Houston, Texas 77098
> **Attorneys for the Plaintiffs**

  /s/ Christopher B. Gilbert
Christopher B. Gilbert