IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
GALVESTON DIVISION

| | | |
|---|---|---|
| CHANDRA JACKSON ON BEHALF OF MINOR CHILD JANE DOE, TATIAWNA JORDAN ON BEHALF OF MINOR CHILD JOHN DOE, *Plaintiffs*, | § § § § § § | |
| v. | § § | C.A. No. 3:22-cv-00271 |
| CLEAR CREEK INDEPENDENT SCHOOL DISTRICT *Defendant*. | § § § § | |

## DEFENDANT CLEAR CREEK INDEPENDENT SCHOOL DISTRICT'S REPLY TO PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS

TO THE JUDGE OF THE HONORABLE COURT:

Defendant Clear Creek Independent School District ("Clear Creek ISD" or "the District") files its Reply to Plaintiffs' Memorandum in Response to Defendant's Motion to Dismiss, and would respectfully show the Court as follows:

1. **Damages**: As a threshold matter, Plaintiffs wholly fail to respond to Defendant's argument that emotional distress damages are not recoverable in a private action for race discrimination under Title VI (as a Spending Clause statute) under *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562, 1576 (2022), and are not entitled to punitive damages under Title VI (under *Barnes v. Gorman*, 536 U.S. 181, 188-189 (2002)) or any other theory they have asserted. Said damage claims should therefore be dismissed. Because the only damages Plaintiffs seek under Title VI are emotional-distress-based or punitive, and Plaintiffs have not otherwise explained in their Response

how they have any cognizable damage claim under Title VI that survives *Cummings*, Plaintiffs' Title VI claim should be dismissed.

2. **Race Discrimination (Title VI or Equal Protection)**:  The District does not disagree that Plaintiffs have put the Defendant on notice that Plaintiffs are complaining about a handful of "violent" acts between them and other students – although given that John Doe only alleges three incidents where he was supposedly "choked", "punched" and "tripped", with no specifics alleged about any of these incidents that would indicate their severity, and Jane Doe alleges even less than that, claiming that "teachers at Clear Creek watch[ed] other students beat John and Jane Doe to the point that they needed medical attention" (Response, ¶ 20) is a bit hyperbolic.  What Plaintiffs have ***not*** done is put the District on notice of why they think that these incidents were because of the students' race. The Supreme Court has instructed lower courts that, with respect to gender-based harassment under Title IX (and, by analogy race-based harassment under Title VI), they must remember that:

> schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and namecalling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that [the statute] is designed to protect.

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651–52 (1999) (citation omitted).  *See also Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409-410 (5th Cir. 2015) (applying

the *Davis* standards to Title VI). While the District would agree that the acts alleged to have occurred here are probably more than the "simple acts of teasing and namecalling" referred to in *Davis*, the point of that quote is that "students are still learning how to interact appropriately with their peers," and that the law does not make illegal all misbehavior between students, but only misbehavior that is based on an illegal motivation.

   3. There simply are insufficient facts alleged in the Amended Complaint to create a plausible claim of *race* discrimination, as opposed to general bullying or mutually antagonistic behavior between young students. Like in the Amended Complaint, Plaintiffs repeatedly argue in their Response claims such as "John and Jane Doe suffered these abuses *because they are black*" (Response, p. 3 (emphasis added)), but they never really explain how or why they believe that. As the Supreme Court noted in *Iqbal*:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 1949–50 (2009). That is all the Plaintiffs present here: the mere "possibility" that race motivated any misbehavior towards them. Nowhere is this more clear than on page 5 of the Response, when Plaintiffs ask, "how anyone could read the repeated abuse alleged in plaintiffs' complaint, isolated to two black students (children), and not wonder if race was involved with discriminatory intent." If the District (and the Court) must "wonder" if race was involved in this case, the Plaintiffs have failed to meet *Iqbal*'s plausibility standard.

4. Perhaps sensing their lack of plausible factual allegations, Plaintiffs suggest that they "should be allowed to further develop their case in discovery." (Response, ¶ 16.) However, numerous courts around the country have rejected similar attempts to engage in "plausibility discovery," particularly when the defendant has challenged the sufficiency of a complaint under *Iqbal* and *Twombly*. *See, e.g., Mujica v. AirScan Inc.*, 771 F.3d 580, 593, n.7 (9th Cir. 2014) ("To the extent that any of those decisions suggests that courts retain discretion to permit discovery whenever a plaintiff has failed to satisfy Rule 8's plausibility standard, it is simply incompatible with *Iqbal* and *Twombly*."); *Vega v. Davis*, 572 Fed.Appx. 611, 616 (10th Cir. 2014) (rejecting plaintiff's argument that the motion to dismiss should be denied due to his "lack of access to relevant information"); *Carter v. DeKalb Cnty., Ga.*, 521 Fed.Appx. 725, 728 (11th Cir. 2013) (holding that a plaintiff who failed to allege plausible claims against defendants was not entitled to discovery because "discovery follows the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim." (internal quotation marks omitted)); *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 225 F. Supp. 3d 1178, 1180 (S.D. Cal. 2016) ("The unambiguous directive in *Iqbal* and *Mujica* does not allow the court discretion to order pre amendment plausibility discovery. The Plaintiffs are not entitled to discovery in order to allege sufficient facts to 'nudge its claim across the line from conceivable to plausible.'")

5. These cases are consistent with how this Court and other district courts in the Fifth Circuit have addressed the issue of plausibility discovery. In *Jones v. Nueces County, Texas*, 2012 WL 3528049 (S.D. Tex. 2012), this Court considered § 1983 excessive force

and retaliation claims brought by a pretrial detainee, who alleged that a prison guard had slammed him against the wall and kicked him several times after a heated discussion. Although the plaintiff alleged that the excessive force arose out of a policy or custom of the County, the County responded that the Complaint contained mere conclusions or recitations of elements of claims rather than creditable facts, with which the Court agreed. The plaintiff then argued that he needed time to conduct discovery to figure out if the County had a policy of allowing excessive force, but the Court said "No":

> Federal practice does not allow this. Jones' "plead first and discover if there are supporting facts later" is exactly the problem that the Supreme Court sought to remedy in *Twombly* and *Iqbal*. The case proceeds to discovery only if the complaint contains enough facts to give rise to a reasonable expectation that discovery will reveal evidence of the elements of the claim.

*Id*. at *4 (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009)). The Court then dismissed the excessive force claim against the County, finding that the allegations in the Complaint were insufficient under the *Twombly/Iqbal* test.

6. In *Mohamed v. Irving Indep. Sch. Dist.*, 300 F.Supp.3d 857 (N.D. Tex. 2018), a student who was disciplined for bringing a "hoax bomb" to school sued, claiming that his discipline was race and religious discrimination. The court dismissed the initial complaint on the grounds that it did not contain sufficient factual allegations from which the court could reasonably infer that the student was subject to unequal disciplinary treatment based on his religion or race, but gave the plaintiffs leave to replead. *See id*. at 866, 879-80. In considering the school district's motion to dismiss the second amended complaint, the court noted that the plaintiff had alleged that there was a separate lawsuit against the school district in which a student alleged peer harassment based on his religion,

*id.* at 880 and that he needed an opportunity to conduct discovery, "to find out if his suspicions against the IISD are true and that it treated similarly situated students differently based on racial or religious criteria." *Id*. The court rejected the request for plausibility discovery:

> Before proceeding to discovery, a plaintiff must plead enough facts to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (a complaint must provide "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). As the Court stated in *Iqbal*, Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79, 129 S.Ct. 1937.

*Id*. As in the above cases, Plaintiffs should not be allowed to engage in plausibility discovery here.

7. Plaintiffs argue that they have sufficiently alleged race discrimination by claiming that students used "vitriolic and epithet-laden languages" (Response, ¶ 20) towards them. That language is a single time when Jane Doe was called "Fat Durty Stupid" (Dkt. No. 3, ¶ 8 ("Incident 2")), and a teacher (not multiple students, as suggested in the Response), calling John Doe "ink monster" a single time. While the District does not excuse this language (if it occurred), calling someone "fat," "dirty" or "stupid" on its face is not race-based, absent some further factual context that would suggest such motivation. *See*, *e.g.*, *Ford v. New York City Dep't of Health & Mental Hygiene*, 545 F. Supp. 2d 377, 389 (S.D.N.Y. 2008), *aff'd sub nom.*, *Ford v. N.Y.C. Dep't of Health & Mental Hygiene*, 352 F. App'x 471 (2d Cir. 2009) ("First, Ford provides no evidence that her coworkers' looks and abusive comments—like "fat fish" and "stupid fish"—were directed at her because she is a woman. The comments, which were certainly disrespectful and rude,

indicate her coworkers' general dislike for Ford, but are not objectively indicative of gender animus.");[1] *McDowell v. Iroquois Job Corps Ctr. Educ. & Training Res.*, 2016 WL 1729492, at *6 (W.D. N.Y. 2016), *report and recommendation adopted*, 2016 WL 1720410 (W.D. N.Y. 2016) ("Plaintiff has presented no evidence linking Walker's conduct to his race. Calling someone names to infer that they are stupid or lack intelligence, while rude and unprofessional, is insufficient to support an inference of discriminatory animus."); *Litten v. GM Components Holdings, LLC*, 2022 WL 706971, at *7 (W.D. N.Y. 2022) ("The conduct by Palmer of which Litten complains—one incident of being called a "dirty Indian" in 2016, one incident of being called an "old stupid thief" in 2017, Palmer's spraying items Litten had touched, and one incident of having metal thrown toward her, but not hitting her—does not meet the applicable high standard. The comments amount to "the sporadic use of abusive language," Faragher, 524 U.S. at 788, and the "old, stupid thief" comment and the metal-throwing are both facially race-neutral."). This differentiates from situations where words like "dirty" or "stupid" were used in conjunction with other race-specific words, thereby giving them discrimination context. *See*, *e.g.*, *Gonzalez v. Smith Int'l, Inc.*, 899 F. Supp. 2d 622, 630 (S.D. Tex. 2010) (race claim stated where plaintiff was called "dirty Mexican" and "stupid ignorant Mexican").

       8.      Here, there are no facts alleged at all that would give the use of the insults "fat," "dirty" or "stupid" any context that would even hint that their use was race-based.

---

[1] It is somewhat ironic that here, Plaintiffs assume the word "fat" is race-based, while in *Ford*, they assumed it was gender-based.

This is not a case where there has been a course of ongoing behavior that was clearly race-based, such that it might be inferred that using these insults was part of the ongoing racism. There are no contextual factual allegations that would give us any suggestion as to what "ink monster" was supposed to mean: maybe John Doe got ink on his hands in art class, and something thought that was a funny joke.  Given the paucity of factual allegations surrounding these two alleged instances of hurtful speech, it cannot be plausibly said that these were race-based comments, and they certainly do not rise to the level of harassment that was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school." *Fennell*, 804 F.3d at 408 (citing *Davis*, 526 U.S. at 644).

9.     **Substantive Due Process**:  With regards to their substantive due process claim that Plaintiffs agree they are asserting (Response, ¶ 12), they wholly fail to respond to the District's argument that they cannot show that the substantive due process rights were violated as a result of fellow students assaulting or physically mistreating them, because "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  Their substantive due process claim should be dismissed as a matter of law on its merits.

10.     **Monell**:  Plaintiffs appear to be trying to get around their failure to address the substance of their substantive due process claim by arguing that they have alleged a "failure to train" claim.  (Response, ¶ 12).  This confuses and conflates the merits of a

substantive due process claim with the additional *Monell* standard that they must meet to establish entity liability for a constitutional violation. "Failure to train" is not an element of a substantive due process claim, nor is it a separate cause of action under Section 1983. Instead, it is simply one method for proving entity liability for the violation of an independent-standing constitutional right.[2] *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.") To allege a proper *Monell* "failure to train" claim, a plaintiff must properly allege not only the violation of an underlying constitutional right, but then that the District's inadequate training procedures directly caused the alleged constitutional injuries. *Sanders-Burns v. City of Plano*, 593 F.3d 366, 380 (5th Cir. 2010). Since Plaintiffs have failed to properly allege a substantive due process claim, the Court does not need to reach the "failure to train" issue.

11.  Plaintiffs do not really explain what training they believe the District failed to provide to school officials, or how that lack of training actually caused any constitutional violations. When prior incidents are used to show a pattern, they "must have occurred for so long or so frequently that the course of conduct **warrants the attribution to the governing body of knowledge** that the objectionable conduct is the expected, accepted

---

[2] Plaintiffs appear to have abandoned any argument that they meet the *Monell* standard by establishing a custom, policy or practice adopted by the policymaker for the District, which here would be the Clear Creek ISD Board of Trustees. They make no argument that the Board was involved in or knew about John Doe's or Jane Doe's incidents in any way. They have not argued that the Board formally adopted any actual policies, regulations, bylaws, or ordinances that contributed to Plaintiffs' alleged injuries. They do not argue that there were any discriminatory policies, or that that the Board itself adopted or otherwise authorized those policies. (*See* Response, ¶¶ 12-16.)

practice of city employees." *City of Houston v. Piotrowski*, 237 F.3d 567, 579 (5th Cir. 2001) (emphasis added). Here, the Plaintiffs have not pointed to any similar incidents or conduct by Clear Creek ISD staff that have occurred for so long or so frequently that the course of conduct warrants its attribution to the Clear Creek ISD Board of Trustees. *See, e.g.*, *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (eleven (11) instances of allegedly-illegal warrantless searches were insufficient as a matter of law to create liability for the City of Houston under § 1983.)

12. And the need for training must be obvious to the Board of Trustees; as the Fifth Circuit has noted, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority" *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984); *see also Fennell*, 804 F.3d at 413 ("Thus, even assuming the alleged customs, policies, and failures to train existed among Marion ISD employees, there is no evidence that the Board knew of this behavior or condoned it.") (internal citations omitted). In other words, the pattern has to be significant enough to come to the attention of the school board, which then ignores the need for additional training, and that lack of training then causes the injury to the plaintiff. Plaintiffs here only point to their own situation; there are no *facts* alleged that any failure to train resulted in any other improper student behavior. More importantly, the Plaintiffs have alleged no facts that would suggest that a need for training was so obvious to the Board of Trustees that municipal liability can be attributed to the District.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ Christopher B. Gilbert
    Christopher B. Gilbert
    State Bar No. 00787535
    Southern District No. 17283
    Attorney-in-Charge

Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
Telephone: (713) 554-6744
Fax: (713) 583-7698
cgilbert@thompsonhorton.com

**ATTORNEY FOR DEFENDANT
CLEAR CREEK ISD**

**OF COUNSEL:**

Ryan H. Newman
State Bar No. 24059944
Southern District No. 988075
**THOMPSON & HORTON LLP**
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
Telephone: (713) 554-6767
rnewman@thompsonhorton.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading has been served on all counsel of record through the Court's electronic filing system, on November 18, 2022:

>Mr. Todd E. Webb
>The Law Office of Todd E. Webb
>4101 Greenbriar Suite 122E
>Houston, Texas 77098
>***Attorneys for the Plaintiffs***

　　　　　　　　　　　　　　　　　/s/ Christopher B. Gilbert
　　　　　　　　　　　　　　　Christopher B. Gilbert