Case 3:22-cv-00271  Document 19  Filed on 07/31/23 in TXSD  Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
July 31, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:22-cv-271

Chanda Jackson on Behalf of Minor Child Jane Doe, *et al.*,
*Plaintiffs*,

v.

Clear Creek Independent School District, *Defendant*.

### MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, *United States District Judge*:

Before the court is Clear Creek Independent School District's motion to dismiss. Dkt. 6. The court will grant that motion.

## I. Background

John and Jane Doe attended North Point Elementary in the Clear Creek Independent School District. Dkt. 3 ¶¶ 6–8. They allege that they endured physical abuse, humiliation, ostracization, "torture," and disparate treatment from teachers and fellow students due to their African-American race. *Id.* ¶¶ 7–8.

Specifically, John Doe alleges that:

- Another student assaulted and choked him, but his teacher ignored the situation and never notified his parents.

- An older student punched him in the eye, but Clear Creek ISD "swept the attack under the rug without notifying John Doe's parents" and did not give him the "same protections as the children in the majority."

- Teachers prevented him from using the restroom, even though white students could use toilet facilities as needed, resulting in John Doe eventually urinating on himself.

- Teachers denied him access to drinking water.

- A fellow student tripped him, and—instead of disciplining the aggressor student—teachers initially tried to blame John Doe for the incident and did not report it to his parents.

- North Point segregated him from other students, "placing his desk far apart from the other children" and forcing him to sit alone.

- A teacher called him an "ink monster" and told him he should attend a different school.

*Id.* ¶ 7. Jane Doe alleges that:

- A teacher removed her from her lunch table and forced her to eat lunch alone without providing a reasonable explanation for the removal.

- She felt compelled to seek refuge in the school nurse's office after fellow students physically attacked her and called her "Fat Durty Stupid."

- Another student "slapped [her] so hard she could not hear out of her ear," while her teacher who witnessed the attack took no action and failed to notify Jane Doe's mother.

- Another student bit her on the hand so severely that she needed stitches, and nobody at North Point alerted Jane Doe's mother.

- Another student assaulted her by stepping on her fingers and elbowing her. A witnessing teacher did nothing to discipline the aggressor student, instead blaming Jane Doe for the incident.

*Id.* ¶ 8. The Doe plaintiffs allege that the discrimination they encountered has left them "depressed, confused, traumatized, distraught, and anxious coupled with feelings of insecurity and loss of self-worth." *Id.* ¶ 18.

The Doe plaintiffs sued Clear Creek ISD in July 2022. Dkt. 1. In their first amended complaint, they bring claims under 42 U.S.C. § 1983 for violating their equal-protection and due-process rights. Dkt. 3 ¶¶ 9–11. They seek to hold Clear Creek ISD liable for failure to train, failure to supervise, and for "sanction[ing] the custom, practice, and/or policy or procedure of allowing discrimination to be routinely exercised." *Id.* ¶¶ 12–13. The Doe plaintiffs also argue that Clear Creek ISD violated Title VI of the Civil Rights Act of 1964 through its deliberate indifference to racially motivated abuse, bullying, and harassment. *Id.* ¶¶ 14–18.

## II. Legal Standards

### A. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* (citation omitted). The court does not "strain to find inferences favorable to the plaintiffs," nor does it "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (quoting *Westfall v. Miller*, 77 F.3d 868, 870 (5th Cir. 1996), and *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 406 (5th Cir. 2001)). Naked assertions and formulaic recitals of the elements of a claim will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679 (citation omitted).

### B. Section 1983

Section 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the constitution or laws of the United States. 42 U.S.C. § 1983. A complaint under Section 1983 must allege that the acts complained of occurred under the color of state law and that the complaining parties were deprived of rights guaranteed by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

A complaint under Section 1983 must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 826 (1994). A plaintiff may bring a claim under Section 1983 against government employees in their individual or official capacities or against a governmental entity. *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

### C. *Monell* Liability

Municipal liability under Section 1983, commonly called a *Monell* claim, requires proof of three elements: (1) an official policy or custom; (2) promulgated by a municipal policymaker; (3) which was the "moving force" behind the violation of a constitutional right. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019); *Piotrowski v. City of Houston* (*Piotrowski* II), 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

Municipal liability under Section 1983 cannot be predicated on *respondeat superior*. *Piotrowski* II, 237 F.3d at 578. Instead, a party must show that "the execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under section 1983." *Monell*, 436 U.S. at 694. Therefore, "isolated unconstitutional actions by

municipal employees will almost never trigger liability." *Piotrowski* II, 237 F.3d at 578 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)); *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989)).

### III. Analysis

#### A. Section 1983

The Doe plaintiffs contend that Clear Creek ISD deprived them of their Fourteenth Amendment equal-protection and due-process rights "through severe and pervasive harassment by both school staff, administrators, and fellow students" and "expos[ure] to a racially hostile environment." Dkt. 3 ¶ 11. They assert that they did not have "equal access to the same educational opportunities enjoyed by their white classmates" and that Clear Creek ISD "treated John and Jane Doe different[ly] from . . . white students." *Id*. The Doe plaintiffs also claim that Clear Creek ISD failed to supervise, train, or "properly address unconstitutional behavior by its staff," and "sanctioned the custom, practice, and/or policy or procedure of allowing discrimination to be routinely exercised against John and Jane Doe without reprimand." *Id*. ¶¶ 12–13. They argue that Clear Creek ISD "allowed teachers to forego their duties to John and Jane Doe" and that teachers and administrators "did nothing," even after "learn[ing] of the depth and extensive nature of the

discrimination that John and Jane Doe suffered." *Id.* ¶ 13. The court addresses these claims in turn.

### 1. Equal Protection

The court finds that the Doe plaintiffs have failed to allege an equal-protection violation. The Fourteenth Amendment precludes a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." *Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009). To state an equal-protection claim, a plaintiff must allege that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Id.* (cleaned up).

"Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Johnson v. Rodriguez*, 110 F.3d 299, 307 (5th Cir. 1997) (quoting *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992)). "A violation of equal[-]protection rights can only occur when governmental action classifies or distinguishes between two or more relevant persons or groups." *Chaney v. E. Cent. Indep. Sch. Dist.*, No. SA-21-CV-01082-FB, 2022 WL 1540592, at *12 (W.D. Tex. May 16, 2022) (citing *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)). "Absent allegations of intentional

discrimination, or allegations from which the court can reasonably infer intentional discrimination, [a plaintiff] fails to allege an equal protection violation." *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 616 (N.D. Tex. 2017) (citing *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997)).

None of the facts the Doe plaintiffs have pleaded allow the court to reasonably infer that the Doe plaintiffs experienced intentional discrimination. Jane Doe has alleged that she was forced to eat lunch alone, assaulted, bit, called "Fat Durty Stupid" by other students, and that her teachers took no action to remedy the abuse. Dkt. 3 ¶ 8. She has not pleaded any facts, however, that would allow the court to plausibly infer that racial discrimination played any role in those incidents or the response to them. There is no basis for the court to conclude that she even received treatment different from that of other similarly situated students.

For his part, John Doe alleges that "other white students could go to the restroom as needed," yet he could not "because he was African American." Dkt. 3 ¶ 7. But the court cannot, without more facts, make the inferential leap that this differential treatment occurred *because* of John Doe's race. Simply asserting that his teacher prevented him from using the bathroom "because he was African American" is conclusory, and no other

facts indicate intentional discrimination played a role. *See Edgers v. PNC Fin. Servs. Grp.*, No. SA-22-CV-0996-JKP, 2023 WL 4093400 (W.D. Tex. June 20, 2023) ("[N]aked allegation[s] of discriminatory intent are too conclusory to survive a motion to dismiss.").

Nor does the allegation that a teacher referred to John Doe as an "ink monster" constitute an equal-protection violation, even if the court treats the phrase as a racial epithet. *See Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir. 2003); *Oliver v. Cuttler*, 968 F. Supp. 83, 88 (E.D.N.Y. 1997). "The use of a racial epithet without harassment or other conduct depriving the victim of his established rights does not constitute an equal protection violation." *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004). Almost all the incidents of harassment John Doe has pleaded came at the hands of his classmates, not his teachers. And the kind of harassment John Doe has alleged here is not the type that is actionable as an equal-protection violation anyway because it does not involve differential treatment stemming from a discriminatory intent. *See Howard v. Ferrand*, No. 22-701, 2023 WL 346082, at *5 (E.D. La. Jan. 20, 2023).

None of John Doe's other allegations, based on bullying by other students and the failure of his teachers to react, can support an equal-protection claim. The complaint does not indicate the race of any of the

teachers or students involved, and these allegations are devoid of facts that could support an inference of intentional discrimination. In their response to the motion to dismiss, the Doe plaintiffs argue that intentional racial discrimination is plausible because they are black. Dkt. 15 ¶¶ 7–8. However, this assertion fails to rise "above the speculative level" and is insufficient under federal practice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the court grants the motion to dismiss the equal-protection claims.

### 2. Due Process

The court also finds that the Doe plaintiffs have failed to state a due-process claim. The factual basis for this claim in the complaint is unclear. In their response, the Doe plaintiffs seem to treat their due-process claim as coterminous with their failure-to-train and supervise claim. Dkt. 15 ¶¶ 12–16. The court addresses that claim and its implausibility below.

Regardless, the Doe plaintiffs failed to respond to Clear Creek ISD's arguments and authorities outlining the pleading defects of their substantive due-process claim. And the Doe plaintiffs have not alleged facts, as they must, indicating what action Clear Creek ISD committed which deprived them of a recognized life, liberty, or property interest. *Blackburn v. City of*

*Marshall*, 42 F.3d 925, 935 (5th Cir. 1995). Accordingly, the court also grants Clear Creek ISD's motion to dismiss the due-process claims.

### 3. Municipal Liability

Without an underlying constitutional violation, a municipal liability claim fails. *See Whitley v. Hanna*, 726 F.3d 631, 648–49 (5th Cir. 2013); *Poloceno v. Dall. Indep. Sch. Dist.*, No. 3:18-cv-1284-S, 2019 WL 2568681, at *2 (N.D. Tex. June 21, 2019). But even assuming *arguendo* that the plaintiffs have pleaded a plausible constitutional violation, they have not alleged any facts that would make Clear Creek ISD liable.

School districts "cannot be held vicariously liable for the acts of their employees unless the plaintiff's allegations satisfy particular requirements." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010–11 (5th Cir. 2023) (citing *Monell*, 436 U.S. at 691). These requisites are that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* at 1011. An "official policy" may be either:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [district] . . . or by an official to whom the [district] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well

> settled as to constitute a custom that fairly represents [district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995). And in Texas, an independent school district's board of trustees has final policy-making authority. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020); Tex. Educ. Code. § 11.151(b).

Because the school employees who allegedly racially discriminated against the Doe students or ignored the abuse are not final policymakers, Clear Creek ISD cannot be held liable for any unconstitutional actions or inactions under an agency theory. *See Doe*, 964 F.3d at 365. Clear Creek ISD as an entity could be liable if its board of trustees adopted a policy statement, ordinance, regulation, or decision officially that was the "moving force" behind a constitutional violation. *McClelland*, 63 F.4th at 1011. But the Doe plaintiffs do not identify any specific, officially promulgated policy that caused a constitutional violation. To the contrary, the complaint faults North Point staff for ignoring or acting inconsistently with Clear Creek ISD policies. Dkt. 3 at ¶¶ 7–8. To the extent the Doe plaintiffs have pleaded that liability attaches to Clear Creek ISD because of the alleged failure of its employees to follow some unidentified school policy, that theory must fail as an improper

attempt to impose *respondeat superior* liability on municipalities under Section 1983. *See Young v. City of Houston*, 599 F. App'x 553, 555 (5th Cir. 2015) (mem. op.); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993).

Without an officially promulgated policy, Clear Creek ISD could still be liable to the Doe plaintiffs if they fostered a widespread, pervasive "custom" or "practice" of racial discrimination or hostility. *See A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1001 (S.D. Tex. 2014). But there is insufficient factual content to plausibly infer that a persistent, widespread practice of racial discrimination or hostility existed in Clear Creek ISD that was so common and well settled as to constitute a custom fairly representing the district's policy. The incidents described in the complaint amount to bullying and mistreatment, but only two allegations—differential treatment around bathroom use and the "ink monster" epithet—come close to alleging *racial* discrimination, harassment, or hostility.[1]

In any event, these "isolated, allegedly unconstitutional incident[s] [are] generally insufficient to establish an official policy or custom" under

---

[1] While John Doe's complaint alleges that North Point "stigmatized John Doe when they segregated John from other students," it does provide any facts indicating he was forced to sit apart from other students on the basis of race.

Section 1983. *Mohamed*, 252 F. Supp. at 618. The complaint fails to detail other incidents that may have occurred at North Point or other Clear Creek ISD campuses, sufficient to indicate a pattern of abuses "that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). Nor are there any allegations indicating that the Clear Creek ISD board had any actual or constructive knowledge of the incidents involving the Doe children. Instead, the Doe plaintiffs offer the conclusory statement that the "administration at Clear Creek learned of the depth and extensive nature of the discrimination that John and Jane Doe suffered [and] they did nothing." Dkt. 3 ¶ 13; *see McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989) ("Isolated instances . . . are inadequate to prove knowledge and acquiescence by policymakers.").

The Doe plaintiffs also raise failure-to-train and failure-to-supervise theories of liability against Clear Creek ISD. Dkt. 3 ¶ 12. For the plaintiffs to succeed on these claims, they must demonstrate that: (1) the school district's training procedures or supervision policies were inadequate, (2) the school district was deliberately indifferent in adopting these policies, and (3) the inadequate training or supervision policies directly caused the plaintiff's

injuries. *See Goodman*, 571 F.3d at 395; *Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 595–97 (W.D. Tex. 2020).

The court agrees with Clear Creek ISD that the Doe plaintiffs have not alleged any facts, taken as true, that would allow the court to draw an inference of deliberate indifference. To satisfy this "stringent standard of fault . . . a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Est. of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (cleaned up). The Doe plaintiffs have not done so, beyond pointing to the isolated incidents of abuse that the Doe students have alleged they endured. *See Sneed*, F. Supp. 3d at 596. And while a single incident may suffice to demonstrate deliberate indifference, the Fifth Circuit has characterized this as a "narrow" exception that requires the plaintiff to "prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Id.* at 385–86 (cleaned up). The Doe plaintiffs have produced no facts indicating that any failure to train here was so deficient as to constitute deliberate indifference, or to establish any non-speculative causal link between the failure-to-train and the alleged constitutional violation.

Accordingly, the court finds that Clear Creek ISD is entitled to dismissal on the plaintiff's Section 1983 claims.

### B. Title VI Claim

The Doe plaintiffs also bring a Title VI claim against Clear Creek ISD. Dkt. 3 ¶¶ 14–18. Title VI directs that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Public educational institutions that receive federal funds must follow this mandate. *See* 34 C.F.R § 100.13(g) & (i). Title VI prohibits only intentional discrimination. *See Alexander v. Sandoval*, 532 U.S 275, 281 (2001).

The court construes the complaint as raising two theories of Title VI relief: (1) Clear Creek ISD's deliberate indifference to intentional discrimination by North Point staff members and (2) Clear Creek ISD's deliberate indifference to student-on-student harassment and hostile environment discrimination against the Doe students. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020); *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 236 (5th Cir. 2020) (per curiam).

### 1. Intentional Discrimination by North Point Staff

John Doe alleges that a North Point teacher "prevented [him] from going to the rest room . . . [while] other white students could go to the restroom as needed." Dkt. 3 ¶ 7. He claims that this occurred "because he was African American." *Id*. He also has pleaded that a teacher called him an "ink monster." *Id*. The court construes these as intentional-discrimination claims under Title VI.

The bathroom allegations fail to state a Title VI claim because no facts indicate that this differential treatment was motivated by racial discrimination. Accepting John Doe's factual allegations, they do not show more than a speculative possibility that the teacher did not allow John Doe to use the bathroom due to his race. *See Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486, 501–502 (D. Md. 2015).

At this stage of litigation, the court finds that a teacher's use of the phrase "ink monster" to describe a black student may plausibly carry racial overtones. But Clear Creek ISD is still entitled to dismissal of these Title VI claims. Title VI does not permit a school district to be held vicariously liable for the acts of school employees, and John Doe has failed to allege "a single allegation of discriminatory intent on the part of" Clear Creek ISD as an entity. *See Trice v. Pearland Indep. Sch. Dist.*, No. 3:19-CV-00286, 2020 WL

1557750, at *10 (S.D. Tex. Mar. 16, 2020) (citing *Price ex rel. Price v. La. Dep't of Educ.*, 329 F. App'x 559, 560 (5th Cir. 2009) (per curiam)); *Doan v. Bd. of Supervisors of La. State Univ.*, No. 17-3471, 2017 WL 4960266, at *2 (E.D. La. Nov. 1, 2017).

### 2. Student-on-Student Harassment

The Doe plaintiffs have alleged that Clear Creek ISD employees did nothing in the face of a racially hostile peer environment. Dkt. 3 ¶¶ 7–8. A school district may be liable for student-on-student harassment under Title VI's deliberate indifference standard if: (1) the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school . . . and the district (2) had actual knowledge, (3) had control over the harasser and the environment in which the harassment occurs, and (4) was deliberately indifferent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (cleaned up). A court should deem a school district "deliberately indifferent" to acts of student-on-student harassment only where "the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 410. "Peer harassment is less likely to support liability than is teacher-student

harassment." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 166 (5th Cir. 2011).

The complaint contains insufficient allegations that the Doe plaintiffs occupied a *racially* hostile environment at North Point, as opposed to simply a school with discipline and bullying problems. For instance, John Doe alleges that another student choked him and that his teacher failed to notify his parents. While he characterizes this as "institutional abuse that stems from discrimination," none of the allegations suggest that race played any role in the incident or the teacher's inadequate reaction. He alleges a different student punched him in the eye, and North Point again neglected to inform his parents. John Doe says that he "did not receive [the] same protections as the children in the majority"—presumably, white students—but this statement is wholly conclusory and devoid of any facts explaining what protections white students received that North Point did not give him.

And for her part, none of Jane Doe's allegations indicate that racial discrimination played any role in the disturbing abuse or bullying she endured. Though she says that other students pushed, scratched, slapped, and bit her on different occasions and called her "fat," "durty, [sic]" and "stupid," none of these allegations touch on Jane Doe's race. In her response, Jane Doe describes these abusive monikers as racial epithets. But even

making all plausible inferences in her favor, the court cannot accept this characterization. The lack of allegations indicating racial discrimination is fatal to her Title VI claim.

### C. Request to Replead

In the alternative, the Doe plaintiffs request an opportunity to replead. Dkt. 15 at 9. The scheduling order's deadline to amend pleadings has passed. *See* Dkt. 14. Accordingly, Fed. R. Civ. P. 16(b)'s "good cause" standard applies. The Doe plaintiffs have already amended their complaint once pursuant to the court's local procedures. Yet they do not explain why good cause exists or what they would include in any amended pleading. For these reasons, the court denies the request to replead.

\* \* \*

For the reasons stated, the court grants the defendant's motion to dismiss and dismisses the Doe plaintiffs' claims with prejudice. Dkt. 6. All pending motions are denied as moot. The court will enter its final judgment separately.

Signed on Galveston Island this 31st day of July, 2023.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE